Case number 16-6675 Joseph Terry Jr v. Dorsey Hopson II et al. Oral argument, 15 minutes per side. Mr. Wilson for the appellant. If I may reserve two minutes for rebuttal, please. I can't hear you. Could you raise your voice, please? I apologize. If I may reserve two minutes for rebuttal, please. All right. May it please the Court, good morning. My name is Steve Wilson. I represent the appellant, Mr. Joseph Terry. Mr. Terry asked this Court to reverse the summary judgment order from the District Court, which dismissed his three claims. One, his failure to accommodate claim under the Americans with Disabilities Act. Could you speak up some? Sure. Increase the volume there if you don't mind. His first claim, a failure to accommodate under the Americans with Disabilities Act. Two, a disparate treatment claim also under the ADA. And three, a disparate treatment claim under ADEA. The record shows clearly that we've laid out in the appellant's brief that Mr. Terry was essentially an all-star teacher. However, due to a spinal impairment, he sought and was actually granted approved leave by the defendant in this case. However, whilst on approved leave, the defendant violated that reasonable accommodation by taking away his job because of his impairment and attempted to replace him with a far less qualified, less experienced fellow teacher 45 years his junior. In regards to the failure to accommodate claim, the District Court actually dismissed this claim based on the assertion that Mr. Terry had failed to exhaust his administrative remedies before the EEOC. However, if the court can see from the actual EEOC charge on his face, Mr. Terry complained that he was replaced while using approved medical leave as an accommodation for his disability, and shortly thereafter, around two weeks thereafter, he was removed from his job and replaced. Sorry. Also, if the court notes that the EEOC intake documents refer directly to a discharge stroke accommodation claim. Most crucially of all, however, in terms of the exhaustion of remedies argument, the EEOC enforcement guidelines on reasonable accommodations, which we've provided much more detail in the appellant's brief, the response number 18 confirms, at least in the view of the EEOC, that employers must hold open the job of the employee while the employee is on leave unless the employer can show an undue hardship. Even if they can show an undue hardship, they must then reassign that employee to another position so that employee can complete their leave period and then return to work. Accordingly, it is both logical and reasonable that the EEOC would have viewed Mr. Terry's charge of discrimination, alleging a violation of his reasonable accommodation, and investigated accordingly. Additionally, They tried to accommodate him, and he was still kind of crippled up, and they had to put somebody in there to teach this class. When he was originally diagnosed with his spinal condition, he sought leave for corrective surgery and physical therapy following that surgery. They had to put somebody in to teach his class, right? Yes, Your Honor. That's okay. They used a long-term substitute. Yeah, okay. That's okay. Right. Then what is he complaining? When he came back, then that job was taken by somebody else. His complaint essentially was after being granted the approved leave after that period. Shortly thereafter, his principal chose him for removal as part of a reduction in force of several teachers, and our argument is that, and again it's detailed in the brief, that the principal attempted to was openly skeptical to made remarks that Mr. Terry would not be able to be rehabilitated from his condition and return to work, and therefore they needed an economics teacher, which this is what Mr. Terry taught, and that he asked his fellow social studies teacher, Mr. Quinn, to take the necessary test to then replace him. As I said, that happened within a very short period after that he'd been granted a finite period of leave. And therefore, according to the EEOC guidance, they regard that as essentially a, of course, the accommodation to be ineffective. And because the EEOC, the court obviously is not bound to follow what the EEOC thinks, but the EEOC guidance would show what the EEOC would actually investigate when a charge is made. Counsel, you're going over the facts of the case and evidence, and of course you can present your argument however you prefer to do so. But in terms of why you believe that summary judgment was inappropriately granted, what's the specific basis of your argument? Is it that the district judge applied the wrong legal test? Maybe it inappropriately applied McDonnell-Douglas burden shifting, or was it that it ignored, there was substantial evidence in your client's favor that was not taken into account? Really specifically, what's the legal, well, I guess there's a factual determination made by the district court since we're at summary judgment, but why was summary judgment, in your view, inappropriately granted here? In regards to the failure to accommodate claim, the law is clear that the EEOC has actually, either failed to investigate the claim made, which is the failure to accommodate claim, or it's within the scope of the investigation of the EEOC. In other words, the charge grew out of the claim. So there's a statement by the district court in these proceedings that your client didn't exhaust administrative remedies on some of his allegations? Yes, Your Honor. And you're contesting that as one of your arguments? Yes, Your Honor. Maybe if I give some just additional context. In this case, unfortunately, the district court did not view the decision to remove Mr. Terry, to notify him that he would lose his position in April of 2014 whilst on approved leave, the court did not view that as a violation of a reasonable accommodation. And because the court did not analyze that as part of the beginning of the ongoing reasonable accommodation claim, the court then only analyzed subsequent facts where Mr. Terry had tried to find reassignment between July and December of 2014, and the court determined that was simply a failure to hire claim which was never brought up within the EEOC. Our contention is that the failure, the violation of the reasonable accommodation Mr. Terry was on began in April, and the court ignored that. And by ignoring it, they were deprived itself of the context to see that this was an ongoing failure to accommodate claim between April of 2014 and December of 2014. I hope that makes more sense. Well, all right. What standard of review are we under here? I presume we're doing a de novo review since we're on summary judgment. But was your client trying to prove his case, or would he if we send the case back based upon direct evidence, or would this be an indirect evidentiary case where at least that's the part of the case where we're under McDonnell-Douglas burden shifting?  Okay. So your argument would be that your client made out a prima facie case, and what about the issue of pretext? Right, John. And that pretext obviously does not apply in the terms of the reasonable accommodation argument under the ADA. That would go to the disparate treatment claim of the ADA. And in that context, in terms of the prima facie burden, Mr. Terry, it was disputed that Mr. Terry was disabled under the ADA. The court determined that there had been an adverse employment action when he had been told that he would be removed from his position in April of 2014. And the court actually determined there was sufficient evidence to show that Mr. Terry met his heightened burden to show that he was singled out for impermissible reasons, i.e., his disability. Remember, this is a reduction in force defense made by the defendant. And in that scenario, the prima facie has a heightened burden standard. And the court determined that Mr. Terry met that heightened burden standard primarily upon his principal's remarks to his designated replacement, Mr. Quinn, a month earlier, telling Mr. Quinn, I don't believe that Mr. Terry will be coming back. I don't think he can be rehabilitated, even though he's on approved leave. I want you to take the test to essentially replace him. He also stated in an email directly to Mr. Terry, notifying him that he would be accessed, that Mr. Quinn would take the test, the necessary praxis test, and from there would hopefully pass. Otherwise, in the words of the principal, they would be back to square one. The additional evidence of pretext that we put forward, which was that we had a disagreement at the district court level, that our position is that Mr. Terry and Mr. Quinn are similarly situated in all relevant respects. One, Mr. Terry is the economics teacher. Mr. Quinn is the history teacher. And they are both within the social studies department with the school. They both teach the same children. They both evaluated and disciplined under the same system used by the Shelby County schools. And they also report to a common superior, which is Principal Kyle. And our position is that in all relevant respects, they are similar. And the case law shows that if Mr. Terry can establish that he has superior qualifications to his comparator, who is the person chosen to stay and designated to replace him, and would have replaced him had he not successively failed those tests, leaving the school without a certified economics teacher. Like I said, we stated in the brief, Mr. Terry has decades of teaching experience. He's professionally licensed. He has certifications in history and economics and in English. He is recognized as a career ladder three teacher, which is a special designation under the Tennessee Department of Education. His record is stellar. Mr. Quinn, one day maybe, but Mr. Quinn was in the first few months of his teaching career. He was only certified to teach history. He was assigned a mentor. His educational background was far more limited. Essentially, Mr. Terry was a far superior candidate. And then if you take those facts and look at the actual defendant's protocol that they use when they designate who the principal should assign for losing their position at the school, the protocol is clear. The protocol states that the aim is to retain certified teachers to teach the key areas of the curriculum. And even the exceptions to the protocol state that a teacher who is able to teach more areas of the key curriculum, such as Mr. Terry, who taught certified to teach history and economics, is preferable to retain over a teacher who even is more highly evaluated than that teacher who can only teach one area of the curriculum. You may want to wind up here. Unless you want to take some time from your rebuttal time to continue. Sure, I'll take an extra minute if that's possible. All right, and then you'll have a minute for rebuttal. All right. I just wanted to touch upon, we went to pretext, but the court also, by establishing that... Can we have the green light on for a minute, please? I'm sorry about that. No, I'm sorry to be awkward. I'm sorry to be annoying. Shall I wait for the one minute? No, go ahead. All right, okay. The other area where the district court erred in the disparate treatment claim under the ADA, which was where the court assessed Mr. Terry as not otherwise qualified because of attendance requirements of the job. Our position is that the court, unfortunately, did not follow the necessary burden-shifting pattern that is required under the ADA. They made a conclusory statement that he simply could not make the attendance requirements under the job based upon a list of cases which are completely... They're not factually analogous. There is no case which establishes an employee on approved leave can then somehow be determined as not otherwise qualified. That is very different from someone who can't make attendance requirements because of tardiness, excessive absenteeism, et cetera. This man was on approved leave. I mean, just by way of example as a hypothetical, if a worker was to ask for a required leave for treatment purposes for, let's say, cancer, they made a decision they needed that time to proceed with chemotherapy. They asked for and they obtained the required leave. Under the logic of the ruling here by the district court, they would be able to fire that person whilst in the middle of chemotherapy because they were unable to attend to the job. It simply defies the logic and is against the purposes of the ADA. Thank you. Thank you. You'll have your one-minute rebuttal. Thank you. Morning. Morning. May it please the court, my name is Mary Wu Tullis and I represent Superintendent Dorsey Hobson in Shelby County Schools, the defendant's appellees in this matter. This is my first time before this court and it's a pleasure to be here. And I am here to ask this court to affirm the district court's grant of summary judgment dismissing Mr. Terry's claims under the ADA and the ADEA. There are no genuine disputes of material facts which would give rise to an inference that Mr. Terry's alleged adverse employment actions were taken under discriminatory circumstances. So certainly a review in court's function is to ensure that employment laws are upheld and that an employer's decisions are not motivated improperly or taken under illegal considerations. But this court has said that it is not the business of this court to second guess an employer's business judgments. And that particular general principle should hold even more weight in this context as the employer is a school system. And the personnel decisions of a school system are largely influenced by public policy considerations that affect the education of our school children as well as mandatory programmatic needs of a particular school. What about we had the circumstances where your client was going to replace the plaintiff with a much younger man, less teaching experience, wasn't even certified to teach the economic subject matter? That would be a problem against your argument, wouldn't it? There's a couple of things to unpack in that particular statement or question. It's premised on a couple of presumptions that I would like to address. For example, being certified in economics. To be certified in a particular subject area is the same as receiving an endorsement. As a general principle, every teacher must be certified in a subject area. Mr. Terry was certified in economics and in English and in history. Mr. Quinn was certified in history. But that does not necessarily mean he is prohibited from teaching up to two courses of economics or a subject outside of his certification under state law. For example, that's why you could potentially see a physical education teacher teaching one course of history, though he does not have the certification or the endorsement in history. Sometimes, while that's not desirable, it's due to the programmatic needs of a particular school. So what happened at Wooddale High School following the 2013-14 school year is that the principal had to cut over 10 percent of his teaching staff. And Mr. Terry held a full-time economics teaching position. That consisted of teaching five courses of economics and one course of sociology. Did Mr. Terry make out a prima facie case here to show that he was qualified for this position that he lost? So in terms of the ADA claim, he could not show that he was qualified, and that's because of the attendance requirement of teaching class. You have to be there. You have to be there to teach a class. Well, there was no engagement regarding a reasonable accommodation with respect to the disability. There was some mention in the record as to whether he could, if he had to, come in and teach in a wheelchair, but that was really never discussed. And the whole subject matter of an accommodation was not really discussed or pursued, was it? So there's, and it depends on which accommodation or which allegation of accommodation you're talking about. So if the accommodation is essentially uninterrupted leave of absence, Mr. Terry got that. He was, while his- Well, not really. They fired him while he was on leave, and then they took him back when he protested that it was illegal for him to be fired when he was on family medical leave, and then they, I guess, reluctantly reinstated him or something like that. They allowed him to remain an active employee on leave, which means that he is free to complete his leave, and if he makes the decision to come back and he has the physician certification that's required by Shelby County Schools, then he is reinstated, and at that point he may seek vacant positions. And this is also, you have to keep in mind that you're balancing a school calendar year. So depending on what the needs of that particular school is at any given point in time, it may not very well be that there are vacant positions or that there is available positions. Well, to go back to Judge Silas' question, you agree that the plaintiff made out a prima facie case on the age discrimination claim. Is that right? No, Your Honor. I don't think he made out a prima facie case on anything. That's correct. Okay. And the reason why he didn't make a prima facie case on the ADEA claim is because he could not show that he was singled out. And since this is a reduction in force case- What I was just now asking about the age discrimination- The ADEA claim, yes. Okay, okay. All right. Go ahead. And in a reduction in force case, the claimant has a heightened burden to show that he was replaced and that there's additional evidence pointing to the fact that he was singled out. So is your position that his job was excess because he wasn't present or because the other person was chosen to sort of spread out, kind of, the economics with other teachers? So our position is that the circumstances at Wooddell High School when these decisions were made was that there was a full-time economics position and then there were teachers in the social studies department. So looking at whether or not the school could financially support a full-time economics position, the decision was made that they couldn't but they could still have the courses taught by the remaining teachers in the social studies department. I thought I heard you say that, well, he wasn't there. So in terms of making out a case that he was qualified for a disparate treatment claim under the ADEA, he couldn't establish that he was qualified because he was on leave at the time that the accessing decisions were made. And attendance is an essential function of being a teacher. And so at the time that that decision was made, he couldn't establish that he was qualified. However, if the question is what factors led to what happened to Mr. Terry, it is because he held a full-time economics teaching position that the classes which could be taught with fewer teachers. Okay, so it wasn't because he wasn't there. No, it was not. It was a decision made by the… So why couldn't he, this is what wasn't really clear to me, he was also a history teacher, right? He held an endorsement for history. Okay, so why couldn't he continue to teach the economics but pick up some history classes? Because the principal was told he had to reduce his teaching staff by, he had to reduce his teaching staff over 10%. He had to cut seven teaching positions. Okay, so why? Why cut Mr. Terry's full-time economics position and not the position held by Mr. Quinn? Or somebody else, yeah. Or somebody else, because the position itself is what's key here. The position is a teacher who teaches five courses of economics and one course of sociology. Those five courses could still be taught with fewer teachers. So you go from needing four teachers in the social studies department to cover history and the economics courses to using three teachers to teach all of the economics courses and the history courses. So it's a matter of looking at the programmatic needs of the schools, given that… Right, so why couldn't he be one of the teachers that stayed? Why couldn't the full-time economics teaching position be… Well, Mr. Quinn was certified in history and some other, not Mr. Quinn, but the plaintiff, Mr. Terry was certified in some subjects other than economics. I know history, and I think one English or one other subject matter. So, I mean, it wasn't that he, that economics was the only thing he could teach. So that's correct. He held endorsements in other subject matters. But when you're looking at the time the accessing decisions were made, the principal had to look at what courses he had to offer and the bodies that he could have offer those courses. So, essentially, this is a true reduction in force. He made the decision to shrink the social studies department so that the full-time economics position is the position that would be eliminated for the following school year. Just out of curiosity, when the principal or the superintendent or whoever was making the decision, was making their decisions, did they take into account in favor of the older teachers, for lack of a better thing to call them, the fact that they had more teaching experience than some other intralevel teachers, or was that not a factor in the decision process? So that was not a factor in this decision-making process, but that would be if you were considering keeping two economics positions and you had to shrink it to one. So that's at that point, you do look. I thought what happened, the economics subject matter was retained. In other words, Mr. Terry's economics classes were retained so that, I mean, he could have continued to teach those. It's simply that a decision was made to disperse those classes, to take them away from Mr. Terry and disperse them among other teachers. So instead of having one economics teacher, you give one economics class to this history teacher, another economics class to the English teacher and all of that. So there wasn't a diminution in the need for the teaching of economics. It's just that the classes were dispersed out to different people. Is that right? So that is correct. There wasn't a diminution in the need for economics classes, but there was a diminution in the available funds to support the number of staff members. Well, we know that. We know there was a reduction, but I'm just... And so you look at it in terms of the position itself, right? So Mr. Kyle, the principal, made the decision to eliminate the full-time economics teaching position because that position and the classes that go with that position could be reallocated to positions that he did not have to eliminate. And so... Let me ask you this. Was Mr. Terry the oldest person teaching there at the school? I believe he was 71 years old or something along those lines. I am not sure the record addresses that particular point, but he was older than Mr. Quinn and Mr. Conyers, some of the other teachers that had become... Was this decision to replace him with several other teachers after he was able to come back or made while he was still crippled up and couldn't teach? The timing of the decision was while he was on leave, and that is just due to the fact that every year, every spring, the school receives what's called projected student enrollment. And these are projections, and they're done formulaically. And that tells a school how many teaching positions they can support the next year. And because the principal had to cut seven teaching positions, Mr. Terry's full-time economics teaching position was eliminated. And those classes could still be taught, but were taught by other teachers who still held positions at the school. Well, how did they accommodate Mr. Terry if they cut his job out and he came back and there's nothing to do? So the accommodation is that they allowed him to finish his leave and to elect to return. So some teachers don't return for whatever reason, and that's why the onus is on the teacher to provide the required physician statement to say that they are available and ready to come back to work and that they want to come back to work. And so at that point, Shelby County Schools and their HR team assisted Mr. Terry in trying to find vacancies, again, keeping in mind that this is a school system. And so every day the needs of the schools are different depending on what happens. But at the time that Mr. Terry came back or was reinstated, it was already into the school year. So the positions, other positions are harder to come by once the school year starts. His job is gone when he came back, right? The position at Wooddale High School was gone. No one filled a full-time economics position the following school year. That position just did not exist. So what happened apart from the one at the one school? What happened with all the positions he interviewed for? So the positions that he interviewed for, they run the gamut. There are some that were middle school English teaching positions, and there's testimony in the record that he wasn't appropriate for a middle school English teacher position because he hadn't taught middle school in a while, and he also hadn't taught English in a while. But ultimately what did happen is that he received an offer from Manassas High School for a full-time economics teaching position that he declined. And at that point— Well, he claimed that it wasn't a legitimate offer. Some reason he had in the record doesn't really explain the circumstances of that offer and declination. So the testimony from the school system is that it was a permanent position, and the inferences or the beliefs on Mr. Terry's part that it was not a permanent position is a product of his own understanding and not a product of any information that was conveyed by the school system. Was he given anything in writing to state that that was an offer of a permanent position? The job posting itself is a job posting for a permanent position. Okay, but he wasn't given anything in writing about the nature of what his tenure would be when the offer was extended. No, he wasn't given anything in writing about the permanency of the position. Okay. Thank you. Any rebuttal? Just three brief points. In regards to, I think, in regards to Mr. Terry's displacement, the removal of his job, the notification to him that he would be removed from his job in April of 2014. I'm sorry. Sorry, I'll speak up. It is true that there was no economics teaching position in the following school year, as opposing counsel has stated. But that was a result of Principal Kyle's failed gamble to replace Mr. Terry with Mr. Quinn. Mr. Quinn failed the practice test in March of 2014. Nevertheless, Principal Kyle emailed Mr. Terry in April to state, I'm going to access your position. I'm going to essentially take a chance on Mr. Quinn. Otherwise, we'd be back to square one. He failed the test again in June. And he didn't pass the test and get certification until midway through the next school year. So the result of basically a poor choice by the principal. Do you know what it was your client wasn't, did not or was not able to accept this offer of a position at a different school? At the Manassas in December of 2014, Your Honor? I can't remember. Right, Your Honor. Mr. Terry has testified that he was offered a temporary position where he would have to leave basically that position within five days of notice. He was told the teacher who was currently on leave could return within five days. He also asked the interviewer, well, I'm in a wheelchair. I'm asked about concerns about the number of the children in the class. There were 35 children, 35 desks in a class. He had some concerns regarding mobility around that classroom. And the interviewer's response, which is in the record, was basically they never get a full class there. So Mr. Terry, those are just some of the reasons. Mr. Terry believed that that wasn't a suitable accommodation for him, a suitable position. I'd also add that while Mr. Terry was on leave, which did come to an end in October of 2014, the record shows he actually was interviewing and applying for positions as of July. July, August, September, October, November, December. Twenty to thirty different positions which he was not selected for given his qualifications and his experience. Have you pointed to any that he should have been given? Yes, Your Honor. Apart from some of the positions opposing counsel as referenced, which are English positions. He's a certified English teacher. There were non-teaching positions which, not to be dismissive, but there were positions such as an in-suspension teacher. An in-suspension, which is essentially we lay out the qualifications for that in the brief, but it was a bachelor's degree and some basic experience dealing with deprived children. He'd had all those experiences. He was more than qualified for, I mean, the crowning fact was that the defendant actually selected people with as little as one year experience or non-employees to fill those roles instead of Mr. Terry. All right. You might want to wrap up there. Unless you have any questions, I'll take the seat. Thank you. Thank you. The case is submitted. And once the table is vacant, the next case may be called.